EASTON and others .*v.* HOUSTON & T. C. RY. Co. and others.[1] (FIRE-BAUGH & Co., Intervenors.)

*(Circuit Court, E. D. Texas.* November 19, 1887.)

CARRIERS—REDUCED RATES—LIMITATION OF TIME.

On January 28, 1887, petitioner entered into a contract with the agent of a receiver of a railroad for shipment of goods from New York to Texas at cut freight rates. The steamer at New York refused to receive the goods, and February 12, 1887, the receiver guarantied the contract, and the goods were shipped March 1st. On March 4th the petitioner was informed that the time had expired, and the former rates restored. Petitioner testified nothing was said to him as to limitation of time of shipment; the agent of the receiver was under the *impression* he had mentioned it. *Held,* that the direct testimony of the petitioner and the conduct of the parties showed that no immediate shipment was contemplated.

On Exceptions to Master's Report.

W. H. Firebaugh & Co. were allowed to intervene in this case, to claim an amount paid by them for freight in excess of amount contracted for with the agent of the receivers, and the matter was referred to a special master, who reported as follows:

I find that on the twenty-eighth of January, 1887, H. D. Patrick, local agent for the defendant receivers in the city of Austin, offered to W. H. Firebaugh & Co., the petitioners, who then were, and for some years had been, merchants in said city, a special or "cut" rate of fifty cents per one hundred pounds upon freight from New York city to Austin if shipped in quantity of not less than twenty thousand pounds in one shipment, and that such offer was for freight for immediate shipment by "the Morgan" line of steamers from New York. That immediately thereafter petitioners sent an order to their correspondents in New York, C. M. Biddle & Co., to ship to them at Austin, via the "Morgan" line of steamers, a quantity of freight consisting of tin, iron, and white lead, weighing more than twenty thousand pounds, and in said order stated the special rate aforesaid. That on the tenth of the following month the said Biddle & Co. notified petitioners that the said Morgan line refused to receive the freight at the special rate named; that immediately, on said tenth of February, petitioners consulted the said agent, Patrick, and stated to him the refusal of the Morgan line to receive the freight at the "cut" rate; that thereupon the said agent communicated the facts to the general freight agent of the defendants, who replied, guarantying to petitioners the special rate offered on the twenty-eighth of January, whereupon petitioners directed their New York correspondent by telegraph as follows: "Ship the goods as soon as possible; we have guaranty;" that on the first of March the said Biddle & Co. delivered the goods ordered on the twenty-eighth of January, and referred to in the above quoted telegram, to the said Morgan line in New York city, consigned to petitioners at Austin, and received therefor *eight* bills of lading, the aggregate weight of the freights so delivered being twenty-six thousand and sixty-nine pounds. I find that the amount of freight charges for transportation of said freight from New York to Austin, at the rate of 50 cents per hundred pounds, would be $130.35, and 95 cents insurance—$131.30; that, upon the arrival of the freight at Austin, about the twenty-first of March, the said agent of the receivers at that station demanded and received of petitioners as freight money on said shipment,

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

$298.51. It is for the difference between the amount so paid and the aforesaid sum of $131.30, to-wit, $167.21, that petitioners sue, claiming that such excess was an overcharge under the contract of January 28th, and the guaranty of February 12th. The defendants contend that, under the contract of January 28th, the goods were to have been made in *one shipment,* and under *one* bill of lading, and that the delay of the shipment until March 1st was not such "immediate" shipment as was contemplated by the parties under the January contract, and the subsequent arrangement of February 12th.

I find that the steam-ships of the Morgan line, over the route by which the freight was mutually contemplated should be shipped during the month of February, sailed from the port of New York on Tuesday, Thursday, and Saturday of each week, and that under these appointments six steam-ships presumably sailed from said port over said route after the twelfth of February, and before the first of March. I find that the delivery of the freight by Biddle & Co. to the Morgan line in New York in one day was *one shipment,* under the terms of the January agreement between petitioners and defendants' agent; and the fact that the Morgan line issued, and said Biddle & Co. accepted, more than *one bill of lading,* did not alter that feature of the transaction. I find that the "immediate" shipment, contemplated in the proposition of January 28th, meant that the freights should be shipped within a reasonable time after January 28th, and that this limitation was carried into the arrangement of February 12th, and that the shipment of the freight by plaintiffs' New York agents, Biddle & Co., on the first of March, was not, under the facts and circumstances of the case, a shipment within a reasonable time after February 12th, and that such delay relieved the defendants of any liability under their guaranty of February 12th to protect the cut or special rate offered on the twenty-eighth of January.

I find, it not otherwise appearing, that the freight money paid by plaintiffs, as aforesaid, was in conformity with the regular tariff rates charged on the first of March for transportation of freight of the character of plaintiffs' from New York to Austin over the Morgan line, and that the defendants had the right to collect the same from the plaintiffs.

The premises considered, I am of the opinion, and so find, that petitioners are not entitled to recover in this action, and I recommend that a decree be entered accordingly.

*R. G. West,* for intervenors.

*J. H. Davenport, Jr.,* for receivers.

PARDEE, J. The issue in the case is whether the contract between the intervenors and the receivers for a cut rate from New York to Austin was limited to immediate shipments.

The evidence of W. H. Firebaugh, who made the contract with Patrick, agent of the receivers, is that at the time of making of the contract there was nothing said about a limit of time. "There was no limit then as to a certain time of shipment."

Mr. Patrick testifies: "My instructions were for immediate shipment. My *impression* is, I so stated it to Mr. Firebaugh at the time, that they were for immediate shipment. It was a cut in rates, and I did not know how long it would last." Fourteen days after the contract, on February 12th, on the refusal of the Morgan line being communicated, the receivers guarantied the contract, and Mr. Patrick is not positive that then he said anything about immediate shipment. The shipment was made on March 1st, and on March 4th, as Mr. Firebaugh testifies, Mr. Patrick

notified him "that the time had expired, and that the usual rates had been restored," and in this testimony Mr. Firebaugh is not contradicted by either the impression or the recollection of Mr. Patrick.

This is practically the material evidence on the point of limitation as to time of shipment under the contract. The defendants set up the limitation, and they fail to establish it by direct evidence; the impressions of their agent cannot overcome the positive testimony of the intervenors.

The conduct of the parties in relation to the shipment shows that neither intended or looked to what is now claimed as to immediate shipment. This appears by the fact that 14 days elapsed before the guaranty was given, and 16 more before the shipment was made, and by the significant fact that March 4th, three days after the shipment, the defendants' agents notified intervenors that the time had expired, and that the usual rates had been restored.

The exceptions to the master's report should be sustained, and the intervenors should have a decree for the return to them by the defendants of the sum of $167.21, and for costs of intervention.